Matter of Young (2021 NY Slip Op 04978)





Matter of Young


2021 NY Slip Op 04978


Decided on September 15, 2021


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
LINDA CHRISTOPHER, JJ.


2020-05401

[*1]In the Matter of Mitchell Bruce Young, an attorney and counselor-at-law. (Attorney Registration No. 2446540)



The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 25, 1992. By order to show cause dated August 6, 2020, this Court directed the respondent to show cause why discipline should not be imposed upon him in this State pursuant to 22 NYCRR 1240.13, based on the misconduct underlying the discipline imposed by an order of the Supreme Court of California filed April 1, 2020. The respondent has neither interposed a response nor requested additional time to respond.



Diana Maxfield Kearse, Brooklyn, NY (Mark F. DeWan of counsel), for the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts.



PER CURIAM.


OPINION & ORDER
By order of the Supreme Court of California (hereinafter Supreme Court), filed April 1, 2020, the respondent was disbarred, on consent, from the practice of law in California and ordered to make restitution to two clients in the amount of $8,387.79, plus interest. This order was based upon a stipulation of settlement filed on December 4, 2019 (hereinafter the stipulation), which was executed by counsel for the State Bar of California (hereinafter State Bar) and the respondent, and a disbarment order issued by the State Bar Court of California (hereinafter State Bar Court) pursuant to the California State Bar Rules (hereinafter SBR) (see SBR 5.120, 5.56, 5.58). The stipulation resolved multiple investigations into the respondent's professional conduct which revealed that the respondent misappropriated client and/or third-party funds, failed to perform legal services, failed to disburse funds to those legally entitled to them, made false statements to his clients, and provided false statements and documents to the State Bar during the course of its investigation.
The underlying misconduct, as set forth in the stipulation, involved the following four matters:
Rolon Matter 
On August 1, 2013, the respondent was retained by David Rolon to represent him in a personal injury matter after Rolon sustained injuries in an automobile accident. On August 1, 2013, Luis Munoz, who was involved in the same accident as Rolon, also hired the respondent to represent him with respect to his personal injury claim. While the respondent informed Rolon and Munoz of the potential conflict of interest by the joint representation, he did not obtain their written consent.
On August 16, 2013, the respondent and Rolon signed a lien agreement with Harbor Comprehensive Health (hereinafter Harbor) for Rolon's medical treatment. The lien agreement required, among other things, that the respondent was to notify Harbor of any settlement or other disposition of the claim within 10 days of same. On February 2, 2017, the respondent received a [*2]$22,000 settlement check in connection with the Rolon matter and deposited the same into his attorney escrow account. Thereafter, the respondent disbursed $7,333 to Rolon as his share of the proceeds, disbursed $7,333 to himself as attorney's fees, and further deducted filing fees and miscellaneous expenses. Following these disbursements, the remaining funds on deposit available to negotiate and satisfy the Harbor lien was $6,956.17.
Thereafter, on February 27, 2017, March 22, 2017, March 28, 2017, and May 3, 2017, the respondent, either through text message or letter, advised Rolon, inter alia, that he was settling the medical lien with Harbor, and upon doing so, would release the remaining funds to Rolon. However, at the time the respondent made these statements to Rolon he knew them to be false, as his last communication with Harbor was eight months prior to the settlement in the matter. Further, as of May 7, 2018, the balance in the respondent's escrow account was $1,594.94, even though the funds on deposit for the Rolon matter should have been $6,956.17.
On June 13, 2017, Harbor sent the respondent a letter identifying the outstanding lien balance as $9,115. Although the respondent received the letter, he failed to respond to Harbor and instead sent a letter to Rolon explaining that he could not disburse the remaining funds until authorized by either Harbor or the court; that he considered the matter going forward as a dispute between Rolon and Harbor; and that the respondent did not want to get involved.
Thereafter, Rolon filed a complaint against the respondent with the State Bar. As part of his written response, the respondent provided the State Bar with a copy of a letter he alleged he sent to Harbor on August 3, 2017, informing it of the settlement and requesting that Harbor provide its opinion as to the appropriate resolution before he filed for court intervention, when in fact, no such letter had been sent to Harbor.
Finally, as of the filing of the stipulation with the State Bar Court, the respondent had failed to pay the remaining settlement proceeds of $6,956.17 to either Rolon or Harbor.
Based on the foregoing, the respondent was found to have violated former California Rules of Professional Conduct (hereinafter RPC) rules 3-110(A) (intentional failure to perform legal services), 3-310(C)(1) (failure to obtain written consent for joint representation in a personal injury matter), 4-100(B)(4) (failure to promptly pay funds to those entitled to such funds), California Business and Professions Code § 6106 (acts involving moral turpitude for intentional misappropriation of $5,361.23 in settlement funds for payment of Rolon's medical lien and by providing statements that were false and misleading to both his client and the State Bar regarding the same), and former RPC rule 4-100(A) (failing to maintain a balance of $6,956.17 on behalf of Rolon in escrow).
Munoz Matter 
As previously noted, on August 1, 2013, the respondent was retained by Munoz to represent him in a personal injury matter after Munoz sustained injuries in the automobile accident in which he and Rolon were involved. Thereafter, on August 16, 2013, the respondent and Munoz signed a lien agreement with Harbor for Munoz's medical treatment. The lien agreement required, among other things, that the respondent was to notify Harbor of any settlement or other disposition of the claim within 10 days of same.
On February 2, 2017, the respondent received a $15,001 settlement check in connection with the Munoz matter and deposited the same into his attorney escrow account. Thereafter, the respondent disbursed $5,001 to Munoz for his share of the proceeds, disbursed $5,000 to himself for attorney's fees, and further deducted filing fees and miscellaneous expenses. Following these disbursements, the remaining funds on deposit available to negotiate and satisfy the Harbor lien was $4,621.50. However, the respondent did not inform Harbor of the settlement, as required by the lien agreement.
On May 3, 2017, the respondent sent Munoz a letter stating he could not disburse the balance of the settlement funds due to the outstanding medical lien. The respondent further informed Munoz that he intended to inform Harbor by letter that he would be releasing the remaining funds to Munoz in order to elicit a quick response from Harbor. Thereafter, on May 7, 2018, the respondent made a disbursement from his escrow in the amount of $10,000, unrelated to the Munoz matter. As a result of this disbursement, the respondent's escrow account balance was reduced to $1,594.94 at a time he was required to maintain a balance of $4,621.50 on behalf of the Munoz matter.
On June 13, 2017, Harbor sent the respondent a letter requesting payment of the lien. Although the respondent received the letter, he failed to respond to Harbor and instead sent a letter [*3]to Munoz explaining that the respondent could not pay the remaining funds to Munoz until the respondent received permission from either Harbor or the court. However, the respondent never sought court intervention.
On August 10, 2017, Munoz filed a complaint against the respondent with the State Bar. As of the filing of the stipulation with the State Bar Court, the respondent had failed to pay the remaining settlement proceeds of $4,621.50 to either Munoz or Harbor.
Based on the foregoing, the respondent was found to have violated former California RPC rules 3-110(A) (intentional failure to perform legal services) and 4-100(B)(4) (failure to promptly pay funds to those entitled to such funds), California Business and Professions Code, § 6106 (act involving moral turpitude for intentional misappropriation of $3,026.56 in settlement funds for payment of lien), and former RPC rule 4-100(A) (failing to maintain a balance of $4,621.50 on behalf of Munoz in escrow).
Meza Matter 
On February 14, 2017, Manuel Meza retained the respondent to represent him in a driving under the influence (hereinafter DUI) criminal matter as well as at the related Department of Motor Vehicles (hereinafter DMV) administrative hearing. In furtherance, the respondent was paid a $3,500 retainer in cash.
On the date of the DMV hearing, despite his knowledge of the appearance, the respondent failed to appear and Meza's license was suspended. Thereafter, the respondent met with Meza and informed him he would be able to have his license reinstated for work purposes, and the respondent subsequently rescheduled the DMV hearing to April 11, 2017.
On March 23, 2017, the respondent failed to appear at a court hearing on Meza's behalf despite having knowledge of the appearance. As a result, a bench warrant was issued directing Meza's arrest. The respondent did not subsequently inform Meza of either his failure to appear or that a bench warrant for Meza's arrest had been issued.
Thereafter, on April 11, 2017, the respondent participated in the rescheduled DMV administrative hearing. Meza was unable to participate and the respondent failed to present any evidence of Meza's need to obtain a restricted license for work purposes. As a result, Meza's license remained suspended. The respondent failed to inform Meza of the continued suspension.
On June 13, 2017, the respondent, for a second time, failed to appear at a scheduled court appearance for Meza's DUI case. As a result, a second bench warrant was issued for Meza's arrest. The respondent again did not subsequently inform Meza of the respondent's failure to appear or of the issuance of a second bench warrant. Thereafter, on June 13, 2017, Meza was arrested for driving on a suspended license. While in custody, Meza contacted the respondent who, for the first time, informed Meza that bench warrants had been issued. The respondent further encouraged Meza to spend the night in custody as he would likely be released the next day on his own recognizance. Meza instead posted bail in the amount of $3,600 and was issued a $570 citation. Meza later contacted the respondent to request reimbursement for bail costs.
On June 19, 2017, Meza met with the respondent and expressed his dissatisfaction with the respondent's legal services, requested his file, and renewed his request for bail cost reimbursement. The respondent informed Meza that he would not reimburse the $3,600 bail costs but that the amount would be credited toward trial preparation for the DUI case. Meza had not been previously informed that additional fees would be required if the matter went to trial.
On February 20, 2018, Meza pleaded guilty to the DUI charges. On March 30, 2018, Meza sent a text message to the respondent requesting a copy of his client file. Although the respondent received Meza's request, he failed to respond.
Based on the foregoing, the respondent was found to have violated former California RPC rules 3-110(A) (intentional failure to perform legal services) and 3-700(D)(l) (failure to promptly release client file), and California Business and Professions Code § 6068(m) (failure to respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services).
Styler Matter 
On December 30, 2014, Kendra Styler hired the respondent to represent her in a personal injury claim relating to a car accident. Styler subsequently arranged for the bills from her treating chiropractor, Prime Chiropractic Group (hereinafter Prime), to be sent directly to the respondent to ensure that Prime's medical lien would be forwarded to her insurance company, [*4]GEICO Indemnity Company (hereinafter GEICO), for payment.
On January 7, 2015, the respondent's paralegal sent a letter to GEICO advising GEICO that the respondent represented Styler in a personal injury claim. Thereafter, on January 19, 2015, and January 20, 2015, GEICO sent letters to the respondent requesting certain information, but the respondent failed to respond to either request. As a result, on January 30, 2015, GEICO sent a letter to the respondent denying Styler's claim, but further advising that they would be willing to reconsider the denial if additional information was provided as requested. The respondent did not respond to this letter nor did he inform Styler of the denial of her claim. On February 13, 2015, GEICO sent the respondent another letter asking that he complete and return forms to determine whether Styler was eligible for Medicare. Although the respondent received this request, he once again failed to respond. Additionally, as Styler was unaware her claim had been denied, she continued to receive medical treatment between January 22, 2015, through April 23, 2015.
On July 7, 2015, the respondent received from Prime a patient evaluation report and an itemized billing statement detailing the extent of Styler's injuries, treatment, and treatment costs. The billing showed Styler's treatment costs were approximately $3,595 for her treatment from January 22, 2015, through July 7, 2015. The respondent however, did not forward the medical evaluation report or the itemized billing to GEICO, and took no other action to advance Styler's matter after July 7, 2015, until October 9, 2016, when the respondent's paralegal sent Styler an email attaching the January 30, 2015 GEICO letter and advising Styler to send GEICO all of her medical treatment bills, otherwise they would not be considered for payment.
On May 2, 2018, Styler received a letter from Transcon Financial, Inc. (hereinafter Transcon), a collection agency attempting to collect the $4,773.44 outstanding medical lien owed to Prime. Styler personally negotiated and settled the lien with Transcon for $1,000 because she was concerned about losing her license as a mortgage consultant. Subsequently, on June 28, 2018, and July 10, 2018, Styler sent emails to the respondent, requesting payment of the $1,000 negotiated with Transcon. The respondent replied to both emails, indicating he would follow up regarding Styler's request; however, he failed to do so. Given this, Styler paid the lien with her own funds.
On May 23, 2018, GEICO sent the respondent a letter requesting that he confirm his representation of Styler, but the letter was returned as undeliverable. On July 19, 2018, Styler sent the respondent an additional email, again requesting reimbursement for the $1,000 lien payment. The respondent did not respond to either GEICO's letter or Styler's email.
On September 24, 2018, Styler filed a complaint against the respondent with the State Bar. In response, the respondent provided the State Bar with a letter dated August 12, 2016, which he claimed had been sent to Styler informing her that he was terminating his representation effective August 12, 2016, that her ability to pursue a personal injury claim would expire on December 15, 2016, and that she needed to file her lawsuit prior to this date. In addition, the respondent provided a second letter dated August 12, 2016, in which he represented that on August 12, 2016, his paralegal sent a letter to GEICO advising it that the respondent was terminating his representation of Ms. Styler. Both statements were false, as neither letter had been sent by the respondent or by his staff.
Based on the foregoing, the respondent was found to have violated former California RPC rules 3-110(A) (intentional failure to perform legal services), and 3-700(A)(2) (failure to notify client of termination of representation), and California Business and Professions Code §§ 6068(m) (failure to respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services) and 6106 (act involving moral turpitude).
In addition, the stipulation provided for factors in aggravation, including that the respondent (1) engaged in multiple acts of misconduct; (2) had a prior history of discipline consisting of a one-year suspension, which was stayed after 30 days, and a private reproval; (3) caused significant harm to his clients; and (4) failed to reimburse his clients. The sole mitigating factor considered was the respondent's settling of the matter by way of stipulation.
The State Bar Court approved the stipulation of facts and disposition of disbarment, and the respondent was placed on involuntary inactive status pending Supreme Court review.
By order of the Supreme Court filed April 1, 2020, the respondent was disbarred from the practice of law in the State of California and ordered to make restitution to (1) David Rolon in the amount of $5,361.23, plus 10% interest per year from June 13, 2017, and (2) Luis Munoz in the amount of $3,026.56, plus 10% interest per year from June 13, 2017.
Although the respondent was duly served with this Court's order to show cause dated [*5]August 6, 2020, he has neither interposed any response thereto, nor requested additional time to respond. Accordingly, there is no impediment to the imposition of reciprocal discipline.
Based on the misconduct underlying the respondent's disbarment by order of the Supreme Court filed April 1, 2020, we conclude that reciprocal discipline is warranted, and effective immediately, the respondent is disbarred and his name is stricken from the roll of attorneys and counselors-at-law.
LASALLE, P.J., MASTRO, RIVERA, DILLON and CHRISTOPHER, JJ., concur.
ORDERED that pursuant to 22 NYCRR 1240.13, effective immediately, the respondent, Mitchell Bruce Young, is disbarred from the practice of law and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Mitchell Bruce Young, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Mitchell Bruce Young, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Mitchell Bruce Young, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and
the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Acting Clerk of the Court